## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

```
_____
                                        )
BRIAN TECH, on behalf of himself and all )
others similarly situated,              )
                                        )        CLASS ACTION
            Plaintiff,                  )
                                        )        Civil Action No.
        v.                              )        1:09-cv-00047 (JEJ)
                                        )
UNITED STATES OF AMERICA,               )           FILED
                                        )           ELECTRONICALLY
            Defendant.                  )
                                        )
                                        )
_____)
```

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF BRIAN TECH'S MOTION
## FOR CLASS CERTIFICATION

---

Nicholas E. Chimicles
Morris M. Shuster
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Proposed Lead Counsel for the Class*

*Additional Counsel on Signature Page*

## TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................1

II. SUMMARY OF ARGUMENT .........................................................................3

III. FACTUAL BACKGROUND ...........................................................................4

    A.    The I.R.S.'s Refund Scheme for the Unlawfully
           Collected Telephone Excise Taxes..............................................4

    B.    Facts Uncovered in Discovery. ..................................................5

           1.    Flaws in the Implementation of the Notice. ..............5

           2.    The Disproportionate Impact of the Notice
               Program on Non-Filers. ..............................................9

           3.    Facts Related to the ESA.........................................11

           4.    The I.R.S.' Failure to Recognize
               the Problems in the Refund Program. .......................13

IV. ARGUMENT ..................................................................................................14

    A.    Class Members Can be Readily
           Identified From Government Records..........................................15

    B.    The Rule 23(a) Requirements are Satisfied. .............................18

           1.    Numerosity. ...............................................................18

           2.    Commonality. ............................................................19

           3.    Typicality. .................................................................20

           4.    Adequacy of Representation. .....................................21

                   i.    *Class Counsel Are Adequate.*...........................21

                 ii.    *Tech is an Adequate Class Representative.* ...................22

C.    The Rule 23(b)(2) Requirement is Satisfied. ..........................................23

    1.    *Standards Applicable to Rule 23(b)(2).* ......................................23

    2.    *Cases Certifying Rule 23(b)(2)*
       *Classes in Similar Contexts.*.......................................................24

D.    The Court Should Appoint C&T as Lead Counsel, and Appoint
    it and the Other Plaintiff's Firms as Class Counsel............................27

V.  CONCLUSION.............................................................................................27

## TABLE OF AUTHORITIES

<u>Cases</u>

*Baby Neal for & by Kanter v. Casey,*
　　43 F.3d 48 (3d Cir. 1994) ..................................................................23

*Bishop v. New York City Department of Housing Preservation &
　　Development,*
　　141 F.R.D. 229 (S.D.N.Y. 1992)........................................................20

*Bowers v. City of Philadelphia,*
　　06-CV-3229,
　　2006 U.S. Dist. LEXIS 71914 (E.D. Pa. Sept. 28, 2006) ..................24

*CG v. Commonwealth Department of Education,*
　　No. 06-CV-1523,
　　2009 U.S. Dist. LEXIS 90028 (M.D. Pa. Sept. 29, 2009)..................23

*Davis v. Kraft Foods N. America,*
　　No. 03-6060,
　　2006 U.S. Dist. LEXIS 3512 (E.D. Pa. Jan. 31, 2006).........................21, 22, 24

*Gates v. Rohm & Haas Co.,*
　　No. 06-1743,
　　2010 U.S. Dist. LEXIS 20343 (E.D. Pa. Mar. 5, 2010) ..................1, 15

*In re Hydrogen Peroxide Antitrust Litigation,*
　　552 F.3d 305 (3rd Cir. 2008) ............................................................15

*Inmates of the Northumberland County Prison v. Reish,*
　　No. 08-cv-345,
　　2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17, 2009) .............15, 19, 20, 23

*McAlarnen v. Swift Transport Co.,*
　　No. 09-1737,
　　2010 U.S. Dist. LEXIS 7877 (E.D. Pa. Jan. 29, 2010)......................19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
　　259 F.3d 154, 183-84 (3d Cir. 2001)................................................20

*In re OSB Antitrust Litigation,*
　　No. 06-826,
　　2007 U.S. Dist. LEXIS 56584 (E.D.Pa. Aug. 3, 2007) ....................18, 19, 20, 21

*Oatman v. Department of Treasury,*
    34 F.3d 787 (9th Cir. 1994)................................................................25

*Oatman v. Department of Treasury,*
    No. 92-0219,
    1996 U.S. Dist. LEXIS 2929 (D. Idaho Mar. 4, 1996) ...............................25, 26

*In re Prudential Insurance Co. Sales Litigation,*
    148 F.3d 283 (3d Cir. 1998) ..............................................................19

*Ritti v. U-Haul Int'l., Inc.,*
    No. 05-4182,
    2006 U.S. Dist. LEXIS 23393 (E.D.Pa. Apr. 26, 2006)....................................22

*Rodriguez v. Village of Montgomery,*
    No. 08-1826,
    2009 U.S. Dist. LEXIS 9166 (N.D. Ill. Feb. 9, 2009) .....................................24

*Rowe v. E.I. Dupont De Nemours & Co.,*
    262 F.R.D. 451 (D.N.J. 2009) ............................................................15

*Sadler v. Midland Credit Management,*
    No. 06 C 5045,
    2008 U.S. Dist. LEXIS 51198 (N.D. Ill. July 3, 2008) ....................................16

*Safran v. United Steelworkers of America,*
    132 F.R.D. 397 (W.D. Pa. 1989) ........................................................16

*Saunders v. Berks Credit & Collections, Inc.,*
    No. 00-3477,
    2002 U.S. Dist. LEXIS 12718 (E.D.Pa. July 11, 2002)....................................18

*Sessions v. Owens-Ill., Inc.,*
    No. 07-1669,
    2010 U.S. Dist. LEXIS 38046 (M.D. Pa. Apr. 16, 2010)...................................20

*Sorenson v. The Secretary of the Treasury,*
    557 F. Supp. 729 (W.D.Wash. 1982) .................................................26

*Sorenson v. The Secretary of the Treasury,*
    752 F.2d 1433 (9th Cir. 1985),
    *aff'd.,* 475 U.S. 851 (1986).........................................................26, 27

*Spencer v. Hartford Finance Services Group, Inc.,*
    256 F.R.D. 284,
    2009 U.S. Dist. LEXIS 19812 (D. Conn. Mar. 10, 2009) .................................16

*Swisher v. United States of America,*
    1:09-cv-47,
    2009 U.S. Dist. LEXIS 119022 (M.D.Pa. Nov. 18, 2009)..................................5

## <u>Statutes</u>

26 U.S.C. §  6012(a)(1)(A) ..........................................................................................16

Fed. R. Civ. P. 23 ..............................................................................................passim

Pub. L. No. 110-185, 122 Stat. 613 ....................................................................11, 12

# I. INTRODUCTION

Plaintiff Brian Tech ("Tech") seeks to certify a class of taxpayers who are entitled to (but have not yet received) a refund of the telephone excise tax ("FET") paid by them between March 1, 2003 and July 31, 2006, and who the Internal Revenue Service ("I.R.S.") (a) has identified, in connection with the Economic Stimulus Act of 2008 ("ESA"), as persons who did not file a 2006 income tax return, and (b) has identified or can identify from government records as additional persons who did not file a 2006 income tax return (the "Class").[1]  Certification of the Class is not only appropriate because all of the applicable prerequisites of FED. R. CIV. P. 23 are met, but also because the actions taken by the I.R.S. demonstrate that this case is the *only* way that these taxpayers will ever receive a refund of the taxes that the I.R.S. concedes it unlawfully collected from them.

By any account, the I.R.S.'s attempt to get this money back into the hands of these taxpayers was a colossal failure.  The I.R.S. acknowledges that this was the largest tax refund initiative of all time, yet the majority of the budget for this project was allocated to activities such as printing the paper forms and staffing the customer service lines for incoming calls to the I.R.S.  Relatively little was spent on paid media, and no paid radio or paid television

---

[1] This class definition is slightly different from the putative class contained in the initial and amended complaints.  Plaintiff is entitled to make such revisions.  *See Gates v. Rohm & Haas Co.*, No. 06-1743, 2010 U.S. Dist. LEXIS 20343, at *19, n.10 (E.D. Pa. Mar. 5, 2010).

spots were ever secured by the I.R.S. to communicate this message to these people who ordinarily have no interaction with the I.R.S. – despite analysis performed on behalf of the I.R.S. that showed non-filers generally being heavy consumers of television.[2]  As a result of this, along with other shortcomings with its outreach plan, only about 3% of the special refund forms developed for use by non-filers (Form 1040EZ-T) that the I.R.S. had expected to be submitted were actually filed.  As many as 29 million non-filers never received a FET refund.

Even when faced with these figures and the overwhelming evidence of the gross inadequacy of its refund plan, the I.R.S. still insists that it has not violated the due process rights of Class members.  Indeed, David Williams ("Williams"), the I.R.S. official with primary responsibility for administering the refund program,[3] testified that he would do nothing different if he were to do the program over again.

The I.R.S. simply does not get it.  Where, as here, the I.R.S. has conceded that it illegally collected a tax for many years and has acknowledged that it has an obligation to return this money to taxpayers, it cannot minimize the outflow of funds to these taxpayers by implementing a refund program that was destined to fail from its inception.  For this reason, and for those discussed below, this Court should allow Plaintiff to maintain

---

[2]  *See* Exhibit 1.
[3]  *See* Exhibit 2.

his due process claim against the government on behalf of a Class of similarly situated taxpayers.

## II. SUMMARY OF ARGUMENT

This case is ideal for certification pursuant to FED. R. CIV. P. 23(a) and 23(b)(2). It is beyond dispute that (a) the I.R.S. illegally collected a telephone excise tax from millions of taxpayers, (b) these taxpayers are entitled to a refund, (c) the I.R.S. required taxpayers to affirmatively file a tax form in order to obtain a refund, (d) the I.R.S. did not provide direct, individual notification to those taxpayers who otherwise would not file an income tax return, and (e) there remain millions of these non-filers who have not received a refund to this day. What is particularly troubling about this case is that around the same time that it was administering the telephone tax refund, the federal government was also in the process of administering the ESA. In connection with the voluntary payments made by the government through the ESA, the I.R.S. quickly (*i.e.,* within a matter of weeks) generated a list of the names and addresses of non-filers (that is, people who were entitled to a payment under the ESA and who did not file an income tax return), and mailed a packet of information to those taxpayers. That the I.R.S. never went to the trouble of doing the same with respect to an *illegally* exacted tax is indefensible. Plaintiff alleges that this conduct amounted to the deprivation of his property (and the property of Class members) without due process of law.

This Court should certify the proposed Class of non-filers.   Plaintiff
Tech is an adequate class representative; his due process claim is identical to
those of Class members, of whom there are millions; and numerous legal and
factual questions are common to Plaintiff and the Class.  The limited
equitable relief sought here – notice that satisfies due process – is
appropriate to award to Class members, given that the I.R.S. has acted on
grounds generally applicable to the Class as a whole.  The Court, therefore,
should certify the Class pursuant to Rules 23(a) and 23(b)(2).

## III.  Factual Background

### A.    The I.R.S.'s Refund Scheme for the Unlawfully Collected Telephone Excise Taxes.

This action challenges the I.R.S.'s failure to provide constitutionally
adequate notice to Class members of their property deprivation.  On May 25,
2006, the I.R.S. issued Notice 2006-50 (the "Notice"), in which it conceded
that it had improperly collected the FET from millions of Americans, and
established a procedure for taxpayers to obtain a refund for taxes improperly
collected between March 1, 2003 and July 31, 2006.  *See* Plaintiff's First
Amended Complaint ("FAC") ¶ 14.

Pursuant to the Notice, taxpayers' requests for these refunds were
required to be made on their 2006 income tax return.  *See* FAC ¶ 14.
Taxpayers who were otherwise not required by law to file a return were
nevertheless required to file a new special Form 1040EZ-T to obtain their
FET refund.  *Id.*

### B.    Facts Uncovered in Discovery.

On November 18, 2009, this Court issued an opinion denying the United States' motion to dismiss Plaintiff's due process claim.  *Swisher v. United States of America*, 1:09-cv-47, 2009 U.S. Dist. LEXIS 119022 (M.D.Pa. Nov. 18, 2009).   The following day, the Court lifted the discovery stay. Plaintiffs' counsel immediately resumed discovery, and has since conducted several depositions, reviewed thousands of pages of documents, and served interrogatories and other discovery requests on the I.R.S.  The facts uncovered by Plaintiffs' counsel have been remarkable, and demonstrate that the failure of the Notice program can be attributed to a combination of the I.R.S.' arrogance, ignorance and failure to implement an effective outreach campaign.

### 1.    Flaws in the Implementation of the Notice.

As the I.R.S. is quick to point out, at the time it was administered the FET refund program was "the single largest outreach effort[] the IRS had ever conducted…"[4]  Because non-filers were treated differently for purposes of the Notice – and because these taxpayers would otherwise have no interaction with the tax system – the I.R.S. identified as early as 2005 that this discrete group of taxpayers were "one of the populations that would be most difficult for the IRS to reach."[5]   The I.R.S. also recognized that non-filers "were an important subset of the larger population that needed to be

---

[4]  *See* Exhibit 3.
[5]  *See* Exhibit 4.

addressed in [the I.R.S.'] communications and outreach strategy…" [6]
Notwithstanding the breadth of this project and the early recognition by the
I.R.S. that non-filers will require special attention, the Notice procedure was
deficient as to them in several critical respects:

*First,* the I.R.S. did not have an adequate budget to effectively
implement the Notice program.  Of the approximately $71.36 million
requested by the I.R.S. to conduct the program, the I.R.S. estimated that it
would incur up to $66 million in postage and printing expenses.[7]  The I.R.S.
was profligate in spending virtually its entire budget on wasteful and
unnecessary printing costs, and failed to deploy its budget in a manner that
was even remotely calculated to reach non-filers.   Indeed, the I.R.S. never
purchased paid television or paid radio advertisements in connection with the
FET program.[8]  Instead, the I.R.S.'s approach was to essentially rely on its
existing contacts to voluntarily distribute information about the FET to
taxpayers; as Mr. Williams aptly described it: "you hope like hell, frankly,
that all of these third parties who care about this as much as you do are
doing the best they can to get to people who never want to hear from the IRS,
and then you get realistic about what success means."[9]

---

[6]  *See* Exhibit 4.
[7]  *See* Exhibit 5.
[8]  *See* Exhibit 6.
[9]  *See* Exhibit 7.

The I.R.S. issued approximately 22 news releases related to the refund program, but this was done at no cost to the I.R.S. [10] The I.R.S. boasts that information about the FET appeared in some 4,000 articles and magazines, but this press was *earned* media (which is free), as opposed to paid media (for which the I.R.S. must pay a fee to advertise).[11]  Indeed, to Mr. Williams' knowledge, none of the advertising related to the FET done through the I.R.S.'s national partners, community-based coalitions, and local organizations was *paid* media.[12]

The I.R.S.'s actual paid advertisements were limited to a handful of inserts placed in newspapers and senior publications in select geographic areas.[13]  All of the money that the I.R.S. used to purchase this paid media was channeled through a third party advertising agency called Foote, Cone & Belding ("FCB").[14]  FCB was retained by the I.R.S. principally to reach Non-filers.[15]  The I.R.S. paid FCB and its sub-contractor approximately $980,000.00 to administer its paid media plan related to the FET.[16]  The amount that the I.R.S. spent on paid media was included in this sum paid to FCB.[17]  Gale Ellis, the chief of marketing at the I.R.S. who worked with FCB,

---

[10]  *See* Exhibit 8.
[11]  *See id.*
[12]  *See* Exhibit 9.
[13]  *See* Exhibit 10.
[14]  *See* Exhibit 11.
[15]  *See* Exhibit 12.
[16]  *See* Exhibit 13.
[17]  *See* Exhibit 11. *See also,* Exhibit 14.

testified that she recalls it spending a grand total of approximately $300,000.00 on paid advertisements related to the FET initiative.[18]

**Second,** Mr. Williams does not recall any public opinion research or polling conducted by the I.R.S. related to getting the message out about the FET.[19]  In addition, Mr. Williams is not aware of the I.R.S. ever interviewing a single non-filer,[20] nor is he aware of any focus tests being conducted with respect to form 1040EZ-T.[21]   A subsequent audit conducted by the Tax Inspector General critiqued the I.R.S. for failing to focus test certain forms related to the FET refund program.

**Third,** a decision was made at the I.R.S. to not translate the 1040EZ-T form into Spanish.[22] Mr. Williams never examined whether having form 1040EZT-s available in Spanish would have resulted in more of them being filed.[23]

**Fourth,** the I.R.S. did very little to involve the telephone companies, which collected the tax on its behalf directly from taxpayers, filed FET tax returns and, therefore, would be well suited to reach non-filers.  According to an I.R.S. witnesses who participated in at least one meeting with

---

[18]  *See* Exhibit 13.
[19]  *See* Exhibit 15.
[20]  *See* Exhibits 16 and 17.
[21]  *See* Exhibit 18.  Mr. Williams explained that to focus test a form means to share a sample of it with a focus group, ask them a prepared set of questions, and consider making appropriate changes to the form based on their responses.  *Id.*
[22]  *See* Exhibit 19.
[23]  *See* Exhibit 20.

representatives from the telecommunications industry, approximately 85% of the telephone companies had records sufficient to identify taxpayers that improperly paid the FET.[24]  Yet all the I.R.S. did was request that the telephone companies voluntarily print information about the FET refunds on telephone bills.[25]  The I.R.S. never monitored this process to see which carriers actually printed this information.[26]  The I.R.S. also never offered to compensate the telephone companies for this work.[27]

*Finally,* according to the I.R.S. the Notice program has long been concluded.[28]  The I.R.S.'s Telephone Excise Tax Executive Committee, which oversaw three internal working groups related to the refund program, stopped having meetings shortly after the 2007 filing season began in January of 2007.[29]  Mr. Williams testified that a "large portion" of the FET refund program had been completed by April 15, 2007.[30]

### 2 .    The Disproportionate Impact of the Notice Program on Non-Filers.

Because the I.R.S. failed to provide Tech and Class members with reasonable notice in a manner that complies with due process, the number of non-filers who actually claimed a FET refund on the special 1040EZ-T form

---

[24]  *See* Exhibit 21.
[25]  *See* Exhibit 22.
[26]  *See* Exhibit 23.
[27]  *See* Exhibit 24.
[28]  *See also*, Exhibit 25.
[29]  *See* Exhibit 26.  *See also,* Exhibit 27.
[30]  *See* Exhibit 28.  There were a few post-filing communication efforts after the filing season which, to the best of Mr. Williams' knowledge, were entirely completed by October 15, 2007.  *See* Exhibit 29.

was – unsurprisingly – extraordinarily low.  According to the Tax Inspector General, the population of non-filers eligible for a FET refund was between 10 million and 30 million people.  As early as August 2006, the I.R.S. estimated that approximately 21.9 million to 22 million of these people would file a form 1040EZ-T to obtain a FET refund.[31]  At one point, the I.R.S. even requested funding to print 55 million of these forms.[32]

Given the $30 to $60 range of safe harbor amounts – which approximately 99% of taxpayers elected to take – these numbers show that the I.R.S. expected to refund between $657 million and $1.3 billion if the projected 21.9 million non-filers filed the form 1040EZ-T.[33]  Yet "given currently available information," only $26,093,978 has been refunded to the 698,328 taxpayers that filed a form 1040EZ-T.[34]  An I.R.S. economist acknowledged what simple arithmetic shows: between approximately 2% and 4% of the money the I.R.S. expected to return to non-filers has actually been refunded on form 1040EZ-T.[35]

This low participation by non-filers was considered the "best case scenario" for the I.R.S.  Diane Grant, another I.R.S. official responsible for

---

[31]  *See* Exhibit 30.
[32]  *See* Exhibit 31.
[33]  *See* Exhibit 32.
[34]  *See* Exhibit 33.
[35]  *See* Exhibit 34.  Several of the I.R.S. witnesses pointed out that an additional 2.4 million other 1040-series returns that were filed could have included non-filers.  Even assuming *arguendo* this entire figure accurately accounts for non-filers, it would not materially change the fact that substantially fewer non-filers received a FET refund than what the I.R.S. had expected.

overseeing the implementation of the Notice, authored an internal projection that identified the "best case scenario" for the I.R.S. resulting in 149.7 million taxpayers getting a FET refund, and the "worst case scenario" being 198.7 million taxpayers qualifying for a FET refund.[36]  So that there was no confusion about the impact of her e-mail, at her deposition, Ms. Grant acknowledged that the "best case" scenario for the federal government would have been lower refund claims; the "worst case" scenario would have been higher refund claims.[37]  When measured by these standards, so few non-filers filed a refund claim that the program must be viewed as a "super case" scenario for the I.R.S.

### 3.    Facts Related to the ESA.

During the same time that the FET refund was made available by the I.R.S., it demonstrated that it had the capability to readily identify these non-filers by mailing to them – on two separate occasions – individual notice of eligibility, tax forms, and instructions on how to receive checks in connection with the ESA, which was enacted on February 13, 2008.  *See* Pub. L. No. 110-185, 122 Stat. 613.

Julie Rushin, the I.R.S. executive in charge of implementing the ESA, explained that in connection with this legislation the I.R.S. worked with the Social Security Administration ("SSA"), Railroad Retirement Board, and Department of Veterans Affairs ("DVA") to identify taxpayers who did not file

---

[36]  *See* Exhibit 35.  *See also,* Exhibit 36.
[37]  *See* Exhibit 35.

an income tax return for tax year 2006.[38] For example, the SSA provided the I.R.S. with data to determine which of its beneficiary recipients had already filed an income tax return.[39]  The I.R.S. then examined these SSA records to determine who did not file a tax return in 2006, and sent these taxpayers a notice of their entitlement of an ESA payment.[40]  All told, these agencies provided the I.R.S. with a data tape of 60 million recipients of SSA benefits, from which the I.R.S. was able to determine that 20.5 million of these people had not filed a 2006 income tax return.[41]

Remarkably, this process of matching up the names and addresses of individuals who did not file a return only took the I.R.S. "a couple of weeks, maybe."[42]  It then cost the I.R.S. only $6 million to notify by mail these 20.5 million people regarding their entitlement to an ESA payment.[43]  Not surprisingly, the participation rate in response to the ESA outreach was vastly different from the percentage of non-filers that claimed a FET refund: the I.R.S. has determined that approximately 80% of this population made a request to obtain an ESA payment, either individually or as a dependent on

---

[38]  *See* Exhibit 37.  As Ms. Rushin explained, Congress wanted to identify Non-Filers from these agencies "in order to get money into the hands of what they qualified as low-income folks that they thought needed the money."  *Id.* These taxpayers were required to file an income tax return for the 2007 tax year in order to claim an ESA payment.
[39]  *See* Exhibit 38.
[40]  *See* Exhibit 39.
[41]  *See* Exhibit 40.
[42]  *See* Exhibit 41
[43]  *See* Exhibit 42.

another taxpayer's return.[44]   Notwithstanding the relative success of the ESA program, the I.R.S. never attempted to create such a list of non-filers with respect to the FET refund program.[45]

Equally remarkable is that at the time the United States was preparing, in early 2008, this ESA list of people who did not file a return for the 2006 tax year, it was well aware of the fact that a disproportionately low number of non-filers had filed a 1040EZ-Ts to claim a FET refund.  In fact, the I.R.S. collected and compiled data on the number 1040EZ-Ts that were filed on a weekly basis.[46]   Yet even with this information at its fingertips, the I.R.S. still failed to provide this group with individual (or adequate) notice of their entitlement to a FET refund – much less actually use the ESA list of non-filers that it had available.

### 4.    The I.R.S.' Failure to Recognize the Problems in the Refund Program.

Even when faced with these compelling facts, I.R.S. witnesses continue to insist that the FET program was effective and successful.  Mr. Williams acknowledges that the I.R.S. "had an affirmative obligation to try a bit harder [to return the FET], because we were refunding money the taxpayers had paid, and we had conceded that we shouldn't have done that." [47]

---

[44]  *See* Exhibit 43.
[45]  *See* Exhibit 44.
[46]  *See* Exhibit 45.
[47]  *See* Exhibit 46.

Yet Mr. Williams took the factually unsupported position that that it is "unlikely" that providing these non-filers with direct individual mailings would be the best way to notify them of their entitlement to a FET refund, stating "I am unconvinced that such a mailing will make a difference…"[48] Mr. Williams also testified "it was not a mistake" to not translate the form 1040EZ-Ts into Spanish.[49]  He also did not think it would make any difference if the I.R.S. had focus tested form 1040EZ-T.[50]

Mr. Williams insists that the program was successful, notwithstanding the dismal participation by non-filers.  Indeed, he testified that he would do "nothing" differently if he could do the program over again.[51]  In other words, Mr. Williams is satisfied with the meager 2% to 4% refund rate.  This personification of government arrogance is only slightly less shocking than Plaintiff's determination, as expressed by Ms. Grant, that a "worst case" scenario would be lots of refund claims.  Whether these positions are the result of willful blindness, arrogance or worse, the result is the same: in the absence of this case going forward as a class action, the millions of taxpayers who are entitled to a FET refund will never receive one from the I.R.S.

## IV. ARGUMENT

In order to certify a class, the plaintiff bears the burden of satisfying all of the prerequisites of FED. R. CIV. P. 23(a), and one of the three sub-parts

---

[48]  *See* Exhibit 47.
[49]  *See* Exhibit 48.
[50]  *See* Exhibit 49.
[51]  *See* Exhibit 50.

of Rule 23(b). *Inmates of the Northumberland County Prison v. Reish*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *48 (M.D. Pa. Mar. 17, 2009) (citations omitted). A district court has "broad discretion in determining whether to certify a class." *Gates v. Rohm & Haas Co.,* No. 06-1743, 2010 U.S. Dist. LEXIS 20343, at *11 (E.D. Pa. Mar. 5, 2010) (citations omitted). In *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3rd Cir. 2008), the Third Circuit addressed how these standards are to be applied by district courts in deciding whether to certify a class. Chief Judge Scirica explained that district courts must (a) make whatever factual and legal inquiries are necessary to find that each Rule 23 requirement is met,[52] (b) resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits, and (c) consider any applicable expert testimony in making this determination. *Id.* at 307. Because the elements of FED. R. CIV. P. 23(a) and 23(b)(2) are met in this case, the Court should certify the Class.

### A.    Class Members Can be Readily Identified From Government Records.

"Before delving into the requirements of Rule 23(a) and (b), the Court must determine whether Plaintiffs' proposed class definitions are 'readily ascertainable based on objective criteria.'" *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009) (citations omitted). "While class definitions obviously are tailored to the specifics of every case, important

---

[52] "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide*, 552 F.3d at 307.

elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Id.* (collecting cases).  The plaintiff is not obligated to demonstrate with particularity the characteristics of the class; instead, the plaintiff "merely [has] an obligation to define the class in a way that enables the court to determine whether a particular individual is a class member so as to ensure protection of the interests of all potential class members." *Safran v. United Steelworkers of America*, 132 F.R.D. 397, 400-401 (W.D. Pa. 1989).  Moreover, a class is considered identifiable if its members can be ascertained based on "objective criteria." *Sadler v. Midland Credit Mgmt.*, No. 06 C 5045, 2008 U.S. Dist. LEXIS 51198, at *10 (N.D. Ill. July 3, 2008) (citations omitted).  *See also, Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 2009 U.S. Dist. LEXIS 19812, at *74 (D. Conn. Mar. 10, 2009) (citing cases, and noting that the class was ascertainable where the defendant's own databases "can be used to ascertain the members of the class.").

The class definition here is set by objective criteria.  With respect to the first clause of the definition (*i.e.,* non-filers who are still entitled to a FET refund), the requirement of whether one was required to file a 2006 federal income tax return is established in amounts set by the I.R.S.  *See* 26 U.S.C. §

6012(a)(1)(A).[53]  The I.R.S. cannot credibly contend that it will be difficult for it to ascertain which Class members it has (and has not) paid a FET refund. As far as which of the non-filers are entitled to a FET refund, Mr. Williams testified that "in this case there's a presumption that these people actually paid the telephone excuse tax and that they should get the money back."[54] The basis for this presumption is that "virtually everyone in America has a phone or has had a phone in the last three years…"[55]

The second clause of the definition (*i.e.,* non-filers identified from the ESA and who the government has or can identify as additional non-filers) is also set by objective criteria, and describes taxpayers who are ascertainable. The I.R.S. has already demonstrated that it has the capability to readily identify non-filers, as it did in connection with the ESA.  *See* § (III)(B)(3), *supra.*  But the ESA is hardly the only tool that the United States has available to identify non-filers.  At his deposition, Mr. Williams described an I.R.S. program called the Automatic Substitute for Return ("ASFR").[56]  The ASFR program is used by the I.R.S. every year to identify non-filers (a) whose employers sent a W-2 form to the I.R.S., but (b) who did not file a 1040 income tax return.[57]  For the non-filers on this list, the I.R.S. will determine

---

[53]  In the 2006 tax year, for example, single taxpayers aged 65 or older were not required to file an income tax return if their gross income was below $9,700.00.
[54]  *See* Exhibit 51.
[55]  *See* Exhibit 51.
[56]  *See* Exhibit 52.
[57]  *See* Exhibit 52.

whether each is entitled to an income tax refund, prepare an income tax

return for those that are, and send it (along with notification that they may

be entitled to an income tax refund) to these non-filers. [58]

In sum, the definition in this case is set by clear and objective

boundaries, and describes a class that can be readily ascertained and

identified by the United States.

### B.    The Rule 23(a) Requirements are Satisfied.

Rule 23(a) has four requirements: numerosity, commonality, typicality,

and adequacy.  *See* FED. R. CIV. P. 23(a).  As discussed below, each of these

elements are met here.

### 1.    *Numerosity.*

In order to be certified, the class must be "so numerous that joinder of

its members is impracticable."  *In re OSB Antitrust Litig.*, No. 06-826, 2007

U.S. Dist. LEXIS 56584, at *5 (E.D.Pa. Aug. 3, 2007).  "Generally, if the

named plaintiff demonstrates the potential number of plaintiffs exceeds 40,

the numerosity requirement of Rule 23(a) has been met."  *Id.* (citations

omitted). "Satisfaction of…numerosity, does not require evidence of the exact

number or identification of the members of the proposed class..." *Saunders v.*

*Berks Credit & Collections, Inc.*, No. 00-3477, 2002 U.S. Dist. LEXIS 12718,

at *16 (E.D.Pa. July 11, 2002).

The United States cannot credibly contest that the numerosity

---

[58]  *See* Exhibit 52. The I.R.S. apparently did not, however, ever send notice
of the FET program to recipients on the ASFR list.

requirement is met here, as the Class consists of millions of geographically dispersed people. *See, e.g.,* FAC ¶ 34. As such, this element is easily satisfied.

### 2. *Commonality.*

"Plaintiffs must also demonstrate that there are questions of law or fact common to the class." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *5. "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). A single common issue of law or fact suffices. *See Inmates of the Northumberland*, 2009 U.S. Dist. LEXIS 126479, at *64 (commonality requires the existence of "at least one" common factual or legal question).

In this case, there are multiple common questions of law and fact. These common questions include, but are not limited to, the following: (a) whether the I.R.S. violated the due process rights of Class members, (b) whether the I.R.S. should be required to provide Class members with direct individual notice of their entitlement to a FET refund, and (c) the nature of any equitable relief to which Class members are entitled. These common questions satisfy the commonality requirement. *See McAlarnen v. Swift Transp. Co.*, No. 09-1737, 2010 U.S. Dist. LEXIS 7877, at *11-12 (E.D. Pa. Jan. 29, 2010) (the commonality requirement was "easily met" where plaintiff

alleged that defendant violated the due process rights of him and of the Class); *Inmates of the Northumberland*, 2009 U.S. Dist. LEXIS 126479, at *65 (common legal question of whether plaintiff and class members "were deprived of their rights pursuant to the constitutional provision under which they seek redress."). This requirement is also met here.[59]

### 3. *Typicality.*

"Plaintiffs must show that the claims of the class representatives are typical of the claims of the class as a whole." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *6. "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Inmates of the Northumberland County*, 2009 U.S. Dist. LEXIS 126479, at *71 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

In this case, Tech alleges that the I.R.S. has violated his constitutional rights by depriving him of property without due process – a claim that is uniform among Class members, and which is based on the same conduct by the I.R.S. Typicality is, therefore, present here. *See Inmates of the Northumberland County*, 2009 U.S. Dist. LEXIS 126479, at *73.

---

[59] As discussed in more detail below, Plaintiff seeks class certification of the Class under Rule 23(b)(2); therefore, there is no requirement that these common factual and legal questions *predominate* over any potential issues that may affect individual Class members. *See, e.g., Bishop v. New York City Dep't of Housing Preservation & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992). *See also, Sessions v. Owens-Ill., Inc.*, No. 07-1669, 2010 U.S. Dist. LEXIS 38046, at *15, n.8 (M.D. Pa. Apr. 16, 2010).

####          4.      *Adequacy of Representation.*

Tech must also demonstrate that he will "fairly and adequately protect the interests of the class." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584 at *6 (*citing* FED. R. CIV. P. 23(a)(4)).  "This requirement has two components: 1) adequacy of class counsel, and 2) adequacy of the class representative."  *Davis v. Kraft Foods N. Am.*, No. 03-6060, 2006 U.S. Dist. LEXIS 3512, at *27 (E.D. Pa. Jan. 31, 2006).  Both requirements are satisfied here.

####          i.      *Class Counsel Are Adequate.*

"To meet the adequacy requirement, counsel must have the ability and incentive to represent the class vigorously." *Davis,* 2006 U.S. Dist. LEXIS 3512, at *27.  As set forth in the accompanying [Proposed] Order, Lead Counsel consists of the law firm of Chimicles & Tikellis LLP ("C&T").  The [Proposed] Order also includes the appointment of the following firms as Class Counsel: C&T; Cuneo Gilbert & LaDuca, LLP; Kelly, Parker & Cohen LLP; Levine, Blaszak, Block & Boothby, LLC; Wolf Haldenstein Adler Freeman & Herz LLP; and Todd & Weld (collectively with C&T, "Class Counsel").  Class Counsel have extensive litigation experience in complex class action cases and civil rights litigation; the resumes of each are attached as Exhibits 53 to 58.

The majority of the Class Counsel firms have worked closely together for several years pursuing the multi-district litigation proceedings against

the United States related to its promulgation of the Notices, and were able to successfully reverse a district court opinion dismissing their claims. Collectively, Class Counsel had filed complaints against the I.R.S. long before it had even conceded the illegality of its collection of the FET in May of 2006. In addition, the Levine, Blaszak, Block & Boothby firm was one of the catalysts to get the I.R.S. to cease its improper collection of the FET, having successfully litigated individual tax refund actions on behalf of several entities. To date, Class Counsel have invested considerable time and resources in prosecuting this case, and they have the ability and incentive to continue to represent the Class vigorously. Thus, Class Counsel are adequate.

### ii. *Tech is an Adequate Class Representative.*

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D.Pa. Apr. 26, 2006).

Tech, the named plaintiff in this case, is an adequate class representative. Like members of the Class, Tech paid the illegally collected FET, he was not required by law to file (and did not file) a 2006 form 1040 federal income tax return on which he could claim a FET refund, and he has

not received the FET refund to which he is entitled.   *See* FAC ¶¶ 3-6.  Tech has actively overseen the prosecution of this case, participated in meetings and worked closely with his counsel, responded to the Defendant's discovery requests, and was deposed by Defendant on March 30, 2010.   Tech has no conflict(s) with members of the Class, and is committed to pursuing this case its behalf.   And, as discussed above, he has retained adequate counsel to represent him in this case.   Adequacy is therefore satisfied here.  *See Inmates of the Northumberland County*, 2009 U.S. Dist. LEXIS 126479, at *73.

### C.    The Rule 23(b)(2) Requirement is Satisfied.[60]

#### 1.    *Standards Applicable to Rule 23(b)(2).*

Class certification pursuant to FED. R. CIV. P. 23(b)(2) is warranted where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  "Where, as here, injunctive and declaratory relief are sought, the dictates of Rule 23(b) are 'almost automatically satisfied…What is important is that the relief sought by the named plaintiffs should benefit the entire class.'"  *Inmates of the Northumberland County Prison*, 2009 U.S. Dist. LEXIS 126479, at *75 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994)).   *Accord, CG v.*

---

[60]  Plaintiff seeks class certification pursuant to FED. R. CIV. P. 23(b)(2) as opposed to FED. R. CIV. P. 23(b)(3).  *See* FAC ¶¶ 32, 38.  This is significant because, unlike Rule 23(b)(3), Rule 23(b)(2) does not contain a predominance or superiority requirement.  *See* FED. R. CIV. P. 23(b)(2).

*Commonwealth Dep't of Educ.*, No. 06-CV-1523, 2009 U.S. Dist. LEXIS 90028, at *23 (M.D. Pa. Sept. 29, 2009) ("The bedrock of Plaintiffs' claims is that a change in the [defendant's] funding formula…would benefit all class members. The Court easily concludes that this action is within the type Rule 23(b)(2) was designed to authorize.").

Courts have repeatedly recognized that Rule 23(b)(2) is "an especially appropriate vehicle" in actions – like this one – that seek declaratory relief for alleged violations of constitutional rights. *See, e.g., Bowers v. City of Philadelphia*, 06-CV-3229, 2006 U.S. Dist. LEXIS 71914, at *11 (E.D. Pa. Sept. 28, 2006) (citations omitted). *See also, Rodriguez v. Vill. of Montgomery*, No. 08-1826, 2009 U.S. Dist. LEXIS 9166, at *12-13 (N.D. Ill. Feb. 9, 2009) ("Certification under Rule 23(b)(2) is particularly appropriate to vindicate alleged violations of constitutional rights based on a governmental practice applied to numerous individuals.") (collecting cases).

Rule 23(b)(2) is readily satisfied in light of these standards. The United States has acted on grounds generally applicable to the Class; namely, it has violated the same due process rights of all Class members by failing to provide them with adequate notice of their entitlement to a refund of the same tax that illegally collected from all of them.

### 2.    *Cases Certifying Rule 23(b)(2) Classes in Similar Contexts.*

Ample authority exists for certifying a class of taxpayers seeking equitable relief against the I.R.S. for similar alleged violations of their

- 24 -

constitutional rights.  For example, the plaintiff in *Oatman v. Dept. of Treasury*, 34 F.3d 787 (9th Cir. 1994) was a woman who filed a joint income tax return with her husband, who owed child support payments for a child from his previous marriage.  *Id.* at 788.  Because of her husband's outstanding child support payments, the I.R.S. refused to return her share of their joint income tax refund.  *Id.*  Even though the I.R.S. had conceded liability to pay the refund, it denied her refund claim.[61]  *Id.* at 789 n.5.  Like Tech does here, the *Oatman* plaintiff sought equitable relief on behalf of herself and similarly situated taxpayers that would require the I.R.S. to, *inter alia*, provide them with notice of their right to a refund.  *Oatman v. Dept. of Treasury*, No. 92-0219, 1996 U.S. Dist. LEXIS 2929, at *3 (D. Idaho Mar. 4, 1996), adopted by *Oatman v. Dept. of Treasury*, No. 92-0219, 1996 U.S. Dist. LEXIS 4940 (D. Idaho Mar. 29, 1996).

The district court certified a class, pursuant to FED. R. CIV. P. 23(b)(2), of similarly situated "innocent spouses" who were entitled to a tax refund, and ordered that the Government identify those class members who had previously had their claim for a "refund denied on account of the IRS policy" which improperly denied the refunds that were undisputedly owed.  *Oatman,* 1996 U.S. Dist. LEXIS 4940, at *6-7.  Upon identification of these taxpayers, the district court ordered the I.R.S. to mail Class members notification of

---

[61]  The I.R.S. also continued to send taxpayers notices that erroneously indicated that these tax refund claims would "generally be denied" even after the IRS had revised its policy to concede liability as to this tax.  *Oatman*, 1996 U.S. Dist. LEXIS 2929, at *6-7.

their entitlement to claim a refund at their last known address.[62]  *Id.*  at \*7.

With respect to the I.R.S.'s argument that the equitable relief sought by the

plaintiff was inappropriate, the court aptly observed that it "knows of no

authority that would prevent it from issuing an injunction requiring such

notice."  *Oatman,* 1996 U.S. Dist. LEXIS 2929, at \*8.

Another closely analogous case is *Sorenson*, which also involved a

challenge by an "innocent spouse" taxpayer to the I.R.S.'s withholding of a

portion of her tax refund because of her husband's delinquent child support

payments.  *Sorenson v. The Secretary of the Treasury*, 752 F.2d 1433, 1435

(9th Cir. 1985), *aff'd.,* 475 U.S. 851 (1986).  *Sorenson* sought to challenge this

conduct by filing suit to obtain, *inter alia*, "a declaration that the taking by

the IRS of money due to married taxpayers to satisfy child support claims

against one spouse constitutes taking of property without due process."  *Id.*

The district court certified a class of these "innocent spouse" taxpayers

pursuant to FED. R. CIV. P. 23(b)(2), explaining that "as plaintiff is not

seeking anything but injunctive and declaratory relief and as defendants

have employed their collection method uniformly throughout the class, final

class-wide injunctive relief is appropriate."  *Sorenson v. The Secretary of the

Treasury*, 557 F. Supp. 729, 733 (W.D.Wash. 1982).  On appeal, the Ninth

Circuit affirmed, remarking that "certification of the class was proper."

---

[62]  The district court also ordered that the mailed notices "will commence
anew the timelines for appeals and administrative actions."  *Oatman*, 1996
U.S. Dist. LEXIS 4940, at \*7.

*Sorenson,* 752 F.2d at 1440.  This Court should likewise certify a Rule 23(b)(2) class of the taxpayers in this case who, like the plaintiff in *Sorenson*, do not seek anything other than injunctive and declaratory relief.

### D.    The Court Should Appoint C&T as Lead Counsel, and Appoint it and the Other Plaintiff's Firms as Class Counsel.

Finally, Rule 23(g) of the Federal Rules of Civil Procedure provides that "a court that certifies a class must appoint class counsel."  FED. R. CIV. P. 23(g).  In making this decision, the Court is directed to consider class counsel's (i) work in identifying potential claims, (ii) class action experience, (iii) knowledge of the applicable law, and (iv) resources available to commit to the litigation. FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

In this case, C&T and Class Counsel have done extensive work in identifying the claims in this case, are experienced in litigating complex class action lawsuits such as this case, are well versed in the applicable law, and have already demonstrated that they are willing to commit the recourses necessary to effectively prosecute this case.  As such, C&T should be appointed Lead Counsel on behalf of the Class, and Class Counsel should be appointed as counsel for the Class under Rule 23(g).

## V. CONCLUSION

For the foregoing reasons, Tech respectfully requests that this Court enter the [Proposed] Order certifying the Class, appointing Tech as the Class representative, designating C&T as lead counsel for the Class, and appointing Class Counsel as counsel for the Class.

Dated: May 18, 2010

Respectfully submitted,

*//s// Nicholas E. Chimicles*
Nicholas E. Chimicles
Morris M. Shuster
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Proposed Lead Counsel for the
Class*


Jonathan W. Cuneo
Robert Cynkar
William Anderson
CUNEO GILBERT & LADUCA,
LLP
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960


Robert E. Kelly, Jr.
Lee S. Cohen
KELLY, PARKER & COHEN
LLP
5425 Jonestown Road
Suite 103
Harrisburg, PA 17112
(717) 920-2220


Henry D. Levine
Stephen J. Rosen
LEVINE, BLASZAK, BLOCK
AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, DC 20036

David L. Wales
Mark C. Rifkin
Martin Restituyo
WOLF HALDENSTEIN
ADLER FREEMAN
& HERZ LLP
270 Madison Avenue
New York, New York 10016
Christopher Weld, Jr.

Christopher Weld, Jr.
Kevin T. Peters
Edward F. Foye
TODD & WELD LLP
28 State Street
Boston, Massachusetts 02109
617-720-2626 (Telephone)
617-624-4855 (Facsimile)

*Proposed Class Counsel*

### CERTIFICATE OF SERVICE

I, Benjamin F. Johns, certify that on this 18th day of May, 2010, I filed

the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**

**BRIAN TECH'S MOTION FOR CLASS CERTIFICATION,** as well as the

accompanying motion, proposed order, declaration and exhibits thereto using

the Court's CM/ECF system, and thereby caused these materials to be

electronically served upon all registered ECF users in this case.


By: _____

Benjamin F. Johns

## CERTIFICATION UNDER LOCAL RULE 7.8(B)(2)

Pursuant to Local Rule 7.8(b)(2) and this Court's Order of May 4, 2010 allowing Plaintiff to file a class certification brief of up to 7,000 words in length, the undersigned certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF BRIAN TECH'S MOTION FOR CLASS CERTIFICATION** contains 6,836 words in the body of the brief (including all footnotes).

By: _____
    Benjamin F. Johns