**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN TECH, on behalf of himself** | : | |
| **and all others similarly situated,** | : | |
| | : | **Civil No. 1:09-CV-0047** |
| **Plaintiff** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.   <u>INTRODUCTION</u>

This case presents another chapter in a three-year legal saga involving a putative class plaintiff in search of a class. This case comes before the court on a discovery motion filed by the Plaintiff, who alleges that he represents a class which he has not yet been able to define with precision after three years of litigation. Now pending before the court is Plaintiff Brian Tech's motion to compel the United States and four third-party companies to comply with an order of the district court that re-opened discovery in this putative class action. (Doc. 171) These discovery requests, while presented as both limited and targeted, are in fact the prelude to a massive cross check of very private information held in industry and government data bases pertaining to millions of individuals. Tech invites us to begin this burdensome and invasive process, with the goal of having these agencies and entities produce what

would be essentially a mailing list for Tech to use in trying the identify his putative class of plaintiffs for his lawsuit. The motion is fully briefed and is ripe for adjudication.

For the reasons explained below, the motion will be denied because the discovery that the Plaintiff seeks to take is overly burdensome, implicates substantial privacy considerations of individuals having no relationship to this action, and is certain to lead to far greater, and more problematic discovery that the district court never contemplated when it permitted Tech to attempt "the *limited* discovery" that Tech requested. (Doc. 156) (original emphasis.) Moreover, it is clear that in order to have even theoretical relevance to class certification, the discovery Tech seeks would then have to rely upon the United States being compelled to take actions that either have no basis or would actually violate federal law. Because Tech's "limited" discovery is, in fact, far reaching, overly burdensome to parties and non-parties, contrary to law, and ultimately futile, we find that the Plaintiff's motion to compel should be denied.

## II.   **BACKGROUND**

This case is a putative class action brought by Plaintiff Brian Tech on behalf of himself and others allegedly similarly situated against the United States of America for the alleged failure to notify individuals who did not file a federal income tax

return in 2006 about their entitlement to a refund of the federal excise tax ("FET") on telephone communication services. Tech contends that this alleged failure to give proper notice amounts to a due process violation. This litigation has now been ongoing for more than three years, and the Plaintiff has twice been rebuffed by the district court in his efforts to obtain class certification. (Docs. 103, 121) Plaintiff moved for clarification or reconsideration of the second of these orders, (Doc. 124), and the district court denied this motion on October 31, 2011. (Doc. 130)

Undeterred, on November 3, 2011, the Plaintiff moved the district court to reopen discovery for what he represented was the limited purpose of serving subpoenas on four major telephone carriers – Verizon Wireless, AT&T Inc., T-Mobile, and Sprint Nextel (collectively the "Carriers"), all of whom are non-parties to this litigation – for the purpose of learning whether these carriers maintained records relating to residential customers that might be utilized to identify potential class members.[1] (Doc. 131) In his brief in support of the motion, Tech requested that he be given a brief period of 60 days in which to conduct "this targeted discovery." (Doc. 132) In support of his motion, the Plaintiff provided the court with a draft

---

[1] Pursuant to the district court's case management order, fact discovery in this action originally ended on October 14, 2010. Accordingly, Tech sought to reopen discovery more than a year after discovery had closed, although we note that the discovery period had concluded prior to the district court issuing its orders regarding class certification matters.

subpoena that he claimed would enable him to discover sufficient information from the Carriers to support a third motion for class certification, and Tech represented that if he did not obtain sufficient or complete answers to the subpoena *duces tecum*, he would propose to take Rule 30(b)(6) depositions of the Carriers.

On February 7, 2012, the district court granted Tech "leave to conduct the *limited* discovery he proposes." (Doc. 156) (original emphasis.)  In its order, the court authorized Tech to serve a subpoena *duces tecum* on each of the Carriers within ten days from the date of the order, and to notice Rule 30(b)(6) depositions if the information or documents produced in response to the subpoenas was incomplete. (Doc. 156)  The district court also directed Tech to file a status report within 75 days of the date of the order.  (Id.)

Tech served the carriers with subpoenas on or about February 9, 2012, and a series of intractable problems quickly emerged.  Thus, on March 19, 2012, Plaintiff's counsel wrote to the district court to explain that the Carriers had expressed concerns with the discovery because it sought confidential business and customer information. (Doc. 158, at 2)  Plaintiff's counsel endeavored to draft an acceptable confidentiality order that could be entered, but that gave rise to concerns on the part of the United States, whose counsel reportedly indicated it would not agree to such an order.  (Id.) Plaintiff's counsel thus requested an opportunity for the parties to confer with the

4

court to address the concerns of the Carriers and the United States, to have a

confidentiality order entered, and to be given an additional 25 days in which to

conduct the discovery.  (Id.)

Recognizing the increasingly problematic nature of the Plaintiff's discovery

requests, which were transmogrifying from "limited" and "targeted" discovery to a

nationwide, multi-faceted, multi-party dispute that could potentially affect millions

of individuals, on March 20, 2012, the district court referred this discovery dispute

to the undersigned.  (Doc. 159)[2]  Promptly thereafter, counsel for the United States

submitted a responsive letter to the court, explaining that the United States opposed

Tech's proposed confidentiality order because: (1) the blanket protections that would

be provided by the order were facially inappropriate; (2) good cause did not exist for

protection of the subpoenaed documents; and (3) the proposed order contained

provisions to which the United States simply could not agree, such as limitations on

---

[2]While Tech has at various times suggested that the district court's February
7, 2012 order resolved all legal issues relating to subpoena enforcement here, and
has implied that this court's function is a largely ministerial task that simply
entails enforcing the subpoenas, we construe the district court's referral March 20
referral order to have precisely the opposite significance. In our view, this referral
order reflects the district court's prescience, and its early recognition that this
discovery plan–which had been presented as simple limited and targeted–was
becoming unwieldy and invasive, warranting judicial oversight.

the United States' law enforcement function that might be exercised based upon information potentially obtained from the documents themselves. (Doc. 160)

In an effort to resolve the burgeoning dispute, the court convened a telephone conference with the parties and the Carriers on March 26, 2012. (Doc. 161) Following this conference, the court directed the parties to further consult with one another and to report back to the court by April 9, 2012, regarding the status of the discovery dispute. (Id.) On April 9, 2012, counsel for Verizon Communications Inc. wrote to inform the court that despite good faith efforts, a number of intractable disputes remained, and counsel represented that Verizon objected to the Plaintiff's requested discovery on the grounds that the discovery created an unacceptable burden on the carrier, and implicated issues of privacy, confidentiality, and corporate proprietary information. (Doc. 162) Furthermore, the Carrier expressed concern regarding how the Plaintiff's discovery requests would ultimately play out, as the discovery process now appeared certain to lead to even more serious disputes and much more problematic discovery proceedings. (Id.) Presented with this growing and cascading array of legal complications which were leading this discovery effort far afield from the "limited" and "targeted" approach initially authorized by the court, the district court referred the dispute outlined in Verizon's letter to this court for resolution. (Doc. 163)

Following the submission of additional letters from the parties (Doc. 165, 166), the court convened a second telephone conference with the parties and the Carriers on April 17, 2012, to discuss the impasse that had arisen in response to Tech's proposed discovery. (Doc. 170) Following this call, the court entered an order authorizing the Plaintiff to file a motion to compel if he could not negotiate a resolution with the Carriers by May 1, 2012. (Doc. 171)

As it turns out, the Plaintiff could not secure any agreement with the Carriers regarding their concerns with, and objections to, the discovery that had been propounded upon them. Accordingly, the Plaintiff filed a motion to compel compliance with the district court's February 7, 2012 order, which had reopened discovery in this case. (Doc. 172) On the same day, Tech filed a brief in support of the motion. (Doc. 173) The United States and each of the Carriers subsequently filed briefs opposing the motion. (Docs. 183, 184, 185, 186, 187) Tech filed a reply brief in further support of his motion on May 31, 2012. (Doc. 188) The motion is now ripe for adjudication, and for the reasons that follow the motion will be denied.

## III.   **DISCUSSION**

### A.   **Fed. R. Civ. P. 26 and 37**

Tech has styled his motion as one seeking to compel compliance with the district court's February 7, 2012 order re-opening discovery for a limited period of

time to permit Tech to propound discovery requests upon the third-party Carriers.

Rule 37 of the Federal Rules of Civil Procedure provides that

> On notice to other parties and all affected persons, a party may move for
> an order compelling disclosure or discovery. The motion must include
> a certification that the movant has in good faith conferred or attempted
> to confer with the person or party failing to make disclosure or
> discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).[3]

---

[3]   The rule also provides that "[a] motion for an order to a party must be
made in the court where the action is pending. A motion for an order to a
nonparty must be made in the court where the discovery is or will be taken." Fed.
R. Civ. P. 37(a)(2). Because the subpoenas *duces tecum* were served in judicial
districts outside of the Middle District of Pennsylvania, we acknowledge that there
is some question as to whether Tech's motion to compel is properly filed with this
court. Nevertheless, notwithstanding this aspect of the rule, we note that Tech has
construed his motion as one to compel compliance with the district court's
February 7, 2012 order authorizing the discovery that he thereafter propounded,
and an order directing the United States to discontinue in what Tech considered to
be efforts to interfere with the Plaintiff's discovery of third parties. (Doc. 172, at
23) We have some doubts as to whether this is actually a reasonable construction
of the motion, since Tech is essentially endeavoring to compel compliance with
the propounded discovery requests. However, construed in this manner, we find
that the motion may be properly considered and resolved in this court, rather than
to require Tech to litigate motions to compel responses to each of the subpoenas
that he has served upon the third-party Carriers in different district courts.
Furthermore, it would make little sense to have these issues, which are relevant to
each of the Carriers as well as the United States, resolved by four separate federal
courts, particularly where the issues are central to this action as a whole. The
motion, the United States' objection, and the concerns raised by the third-party
Carriers all relate to the order actually issued by the district court, and will
therefore be addressed here.

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Tech's  motion, and the United States' and Carriers' responses in opposition to this motion, call upon the court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case.  Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters.  In this regard:

District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In addition, Rule 26(b)(2)(C) provides certain express limitations on discovery, even if the discovery is arguably relevant:

> **(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> **(I)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> **(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  It is the first and third of these limitations that are most particularly applicable to the instant dispute among the parties and the third-party Carriers.

In addition, Rule 45, governing subpoenas, provides additional protection for non-parties who are served with far-reaching discovery demands.  Thus, the rule provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena."  Fed. R. Civ. P. 45(c)(1); see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokester, Ltd., 218 F.R.D. 423, 424 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all the circumstances presented.").  In accordance with these concerns, federal courts have demonstrated willingness to protect the interests of non-parties who are the targets of discovery demands.  See, e.g., Thompson v. Glenmede Trust Co., CIV. A. 92-5233, 1995 WL 752422 (E.D. Pa. Dec. 19, 1995); Tetratec Corp. v. E.I. Dupont De Nemours & Co., Inc., CIV. A. 90-1867, 1992 WL 202169 (E.D. Pa. Aug. 12, 1992).  Moreover, Rule 45 provides that in cases where a non-party is requested to produce electronically stored information, which may ultimately be what Tech intends to seek, "the person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 45(d)(1)(D).

One other immutable rule defines the court's discretion when ruling on motions for this type.  It is clear that the court cannot compel the production of things that do not exist.  Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen

Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010);

Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

With these considerations as our guideposts, we turn to the parties' competing

positions regarding the discovery that Tech has propounded on the Carriers.

### B. Tech's Motion and the Objections of the United States and the Carriers

In his motion, Tech argues that the United States has improperly interfered in

the discovery process between the Plaintiff and the Carriers by contesting Tech's

request that responsive documents from the Carriers be produced on an attorneys'

eyes only basis until a confidentiality order might be entered.  In addition, Tech

argues that the United States has interfered in the process by notifying the Plaintiff

and the Carriers that the United States would oppose Tech's efforts to force the

Internal Revenue Service to issue administrative summonses to the Carriers to permit

cross checking the Carriers records with IRS tax filing records – something Tech

would ultimately need to have done in order to identify potential class members.

(Doc. 173, at 10-11)

Plaintiff claims that after the United States signaled its position, the Carriers

responded by retreating from their prior willingness to negotiate a confidentiality

agreement regarding the requested discovery, and further referred to the United

States' assertion that it would resist any attempt to compel the issuance of administrative summonses in support of the view that the discovery sought was futile. The Carriers also expressed concern that the discovery Tech sought could implicate a host of privacy and confidentiality concerns with respect to their customers, and the Carriers own proprietary business information.

Tech insists that the concerns voiced by the United States and the Carriers are unfounded – at least at this "preliminary stage" (id. at 13) – because he is simply now trying to determine whether the Carriers have in their possession information that could then be used later to determine potential class members.  Tech maintains that the Carriers have failed to demonstrate that the information requested in the subpoenas *duces tecum* would be unduly burdensome for the Carriers to produce, and he argues that the discovery sought would not implicate any state privacy laws, and even if it did, Tech contends that such laws are either preempted or inapplicable in light of the federal issues in this lawsuit.  (Id. at 18.)

Finally, although he seems to urge the court to focus on what he contends is the preliminary and limited nature of the discovery propounded on the Carriers, Tech acknowledges how he ultimately intends to use this information:

> To the extent that Tech's discovery shows that the carriers have pertinent information about people that paid the tax during the relevant time period, *Plaintiff will seek to have it cross-checked with the*

*government's records – at its expense – of those who did not file a 2006*
*federal income tax return.*  By definition, those persons who paid the
FET but did not file an income tax return are non-filers who are entitled
to the constitutionally sufficient notice with which Tech seeks to have
them provided in this action.  While the United States has made clear its
intent to "vigorously object" to this process, Plaintiff will ultimately
seek a Court order compelling it to do so.

(Id. at 20-21)(emphasis added.)  The United States and the Carriers interpret this as

a clear acknowledgment that there is nothing limited about the discovery Tech is

seeking, and that what was represented to be limited discovery is instead clearly just

the first step in a multi-layered discovery plan that will involve the Carriers and the

federal government.

Furthermore, while Tech urges us not to consider this aspect of the discovery

plan, we find that the ultimate goal of this proposal is extraordinarily sweeping in its

reach.  In essence, it would require an agency of the United States government and

the nation's largest communications carriers to indulge in an intensive data mining

effort to match millions of Americans' private identifying information from corporate

and government data bases and then release that information in some format to Tech,

solely so that Tech could then begin to pursue a class action lawsuit.  Given the scope

of this plan, it is, thus, hardly surprising that the United States and the Carriers have

expressed concern with Tech's ultimate objective, with the United States declaring

that such a process to try to identify class members would be unlawful and entirely

improper, and with the Carriers expressing serious concern about being compelled to produce to the Plaintiff private identifying information for their customers to be used in this manner.

###   C.   Much of the Information Sought From the Carriers Would Be Unreasonably Burdensome to Produce, and Would Ultimately Fail, on Its Own, to Yield Useful or Relevant Information

In Request No. 1 of the subpoenas *duces tecum* served upon each of the Carriers, Tech requests "documents sufficient to show all of the categories of Identifying Information in Your possession, custody or control about Customers that paid FET that was collected by You during any part of the Relevant Time Period." The subpoenas further define "Identifying Information" to include "without limitation, names, addresses, phone numbers, Social Security numbers, account numbers, billing records and any other personal or subscriber information." (See, e.g., Doc. 187, Ex. D., Subpoena Duces Tecum to Verizon.)  As T-Mobile, Verizon, and Sprint have separately attested, complying with this particular discovery demand would require a substantial investment of time and resources in order to search the various systems and records maintained by these companies.  These carriers have also submitted declarations that not only point to the burdensome nature of the discovery, but also  to the ultimate futility of Tech's discovery.

For its part, T-Mobile has submitted a declaration in which the carrier represents that it does not possess a master document that identifies whether and to what extent it has retained, or ever had, the requested customer information.   (Doc. 184-4, Declaration of Gary McMillan)  Accordingly, in order to respond to the first of the six categories of information subject to the subpoena, T-Mobile would need to review its historical customer records on a record-by-record basis.  Furthermore, the company notes it is likely that much of the information sought for the period specified in the subpoena no longer exists.  T-Mobile estimates that if it were required to retrieve all of the historic information potentially within its possession and control, the carrier would incur expenses in excess of $2 million – an amount the carrier submits is plainly excessive.  Even after such an investment of time and resources, T-Mobile and the other Carriers have asserted that it is unlikely that they could provide some of the information requested.  (Id.)

Likewise, Verizon maintains that to provide all of the information that Tech is ultimately seeking through the re-opened discovery process would require the carrier actually to create new computer programs for multiple billings systems and customer records, and it would then have to review hundreds of millions of historical records to extract the requested information.  After this undertaking, the information obtained from these searches would still need to be matched.  Verizon submits that as a non-

17

party it should not have to bear the burden "of taking on this herculean and daunting task." (Doc. 187, at 11)  Given the scope of its businesses, in order to comply with Tech's discovery requests, Verizon claims it would be forced to create computer programs for multiple billing systems, that would then pull the requested information, all of which thereafter would need to be matched.  (Doc. 187-6, Declaration of Eric Schaefer at ¶¶ 14-17)

Sprint represents that it would face similar obstacles and burdens if it were required to respond to the first phase of discovery that the Plaintiff seeks, as well as costs attendant to the second phase of discovery that would necessarily have to be conducted for the discovery to have any conceivable relevance to the Plaintiff's efforts to identify class members.  Much of the information that Sprint may have in its possession has been archived to computer tape that would need to be restored and loaded onto an existing database application.  At that point, Sprint would need its technical personnel to write computer code to permit the database application to search the data for applicable customers, and this process would have to be run in stages given the vast volumes of information that would need to be searched – a process that Sprint estimates would take between two and three months. (Doc. 186-1, Declaration of Timothy M. Potter)

Notably, these estimates apply only to Sprint's wireline business, and additional efforts would need to be undertaken to search records from Sprint's wireless business, which is maintained separately, and would require an additional three to four weeks to review.  (Doc. 186-1, Declaration of David Crockett) Moreover, Sprint makes these estimates only with respect to the first phase of discovery that would be triggered by the current subpoenas, and emphasizes that the Carrier would incur substantial additional burdens if ultimately forced to comply with an administrative subpoena from the IRS for its consumer records, which is what the Plaintiff ultimately must pursue in order to "cross check" IRS tax records (that the government will not produce) against Sprint's own customer data that it was able to gather.

Taken as a whole,[4] the independent assessments of each of these Carriers regarding the steps that would be required in order even to respond to the Plaintiff's "limited" discovery that the district court authorized persuades us that the cost, expense, and effort that would go into compliance far exceeds the "limited" discovery

_____

[4] AT&T limited its opposition to Tech's discovery to procedural concerns, since Tech had apparently not served the proper AT&T entity with the subpoena *duces tecum*. (Doc . 185)  Because we find that the discovery process Tech seeks to employ is overly burdensome, would risk disclosure of private information of unwitting non-parties, and would ultimately be futile, we find it unnecessary to consider the procedural arguments that AT&T raises.

that the district court contemplated when it acceded to Tech's request to be permitted

to try to fashion a targeted discovery plan.  Indeed, it is clear upon review of the

district court's February 7 order reopening discovery for a limited purpose and for

only 60 days, that the district court could not have intended to impose such

extraordinary obligations upon the non-party Carriers.  Accordingly, we would be

constrained to deny Tech's motion on this ground alone, since it is now clear that the

discovery the Plaintiff propounded would be vastly more difficult and costly to

produce than the district court could have contemplated, and far more complex than

the "limited," "targeted" and narrowly tailored approach that was initially described

to the court.

However, for the reasons discussed further below, Tech's motion should be

denied for additional and even more compelling reasons, including the grave privacy

considerations at play, and the overriding fact that the discovery sought would be

futile given Tech's inability to make use of the information that he might obtain for

class certification purposes.

### D.   The Discovery Tech Seeks Would Ultimately Violate Customer Privacy and Would Improperly Require the Carriers to Violate State Privacy Laws

While extremely burdensome, Tech's discovery requests also serve as the

prelude to actions which necessarily implicate serious privacy concerns.  It cannot be

ignored that the discovery Tech currently seeks to compel would, on its own, be of little utility, and would not in itself permit Tech to file a renewed class-certification motion.  Instead, to make use of the Carriers' customer data, it is now clear that Tech intends to have private customer information – such as social security numbers – "cross checked with the government's records."  (Doc. 173, at 20)  Plaintiff would have the court ignore this ultimate objective at this stage of the reopened and "limited" discovery proceedings, arguing that the discovery currently sought in the initial subpoenas is "not prohibited by the relevant privacy statutes."  (Id. at 16.)

This assertion ignores the real issue here, which is Tech's ultimate discovery objective:  Tech intends to have the Carriers identify and produce in some electronic format the Social Security numbers for its FET-paying customers for a three and one-half year period.  If Tech is ultimately able to satisfy this aspect of his discovery plan, then he must engage in a far more intrusive exercise, a process which would implicate the privacy interests of millions of individuals, since he would need to find some way of requiring the IRS to compare information provided by the Carriers against the IRS' list of persons who filed tax returns in order to determine those individuals who may have paid FET, but who did not file income tax returns.

Tech apparently intends to accomplish this undertaking by having the court require the IRS to issue administrative summonses to the Carriers in order to obtain

the private customer information of millions of unwitting individuals, and then compel the IRS to cross check this information against the IRS' own data. This, in our view, is an extraordinary proposition. At bottom, Tech would have us order this activity solely as an aid to his private litigation. Thus, we would direct four major communications carriers and an agency of the United States Government to engage in an extraordinary data mining effort affecting millions, and require them to examine the tax filing compliance history of countless cell phone customers, for the exclusive purpose of creating a mailing list for the Plaintiff to use in trying to identify willing class participants in this lawsuit.

When understood in this way, it is clear that Tech's requested discovery would inevitably trigger serious privacy concerns on the part of the Carriers in possession of sensitive customer information. Beyond these serious privacy implications, the discovery exercise that Tech seeks to compel would ultimately be futile in any event because the government has indicated its intention to resist issuing administrative subpoenas or conducting data manipulations to help Tech determine a potential class, and the government's position in this regard is supported by statute. The Carriers thus rightly urge the court to consider the motion to compel in the context of Tech's total discovery plan, and to look squarely at the issues of privacy and futility that are

plainly implicated in this case.  When so considered, we find that Tech's motion must be denied.

Tech dismisses the Carriers' concerns about their customer's privacy, and about being forced to produce social security numbers, as unspecified or unsupported in the law.   But the Carriers have identified a number of threshold legal considerations that would be implicated by the unprecedented nature of Tech's ultimate discovery intentions.

Thus, Verizon identifies federal law designed to discourage improper use of citizens' Social Security numbers by the federal government, 5 U.S.C.A. § 552a (Privacy Act of 1974), and a 2005 report of the United States Government Accountability Office that recommended stronger protection of social security numbers in response to an increase in identity theft. U.S. Government Accountability Office, GAO-05-1016T, Social Security Numbers: Federal and State Laws Restrict Use of SSNs, Yet Gaps Remain (2005).  (See Doc. 187, Ex. E)  The GAO's report cites to state statutes that restrict the use, collection, display and disclosure of social security numbers.  (Id., at 11-15.)  Indeed, even the Federal Rules of Civil Procedure require filings in federal court be redacted to include only the last four digits of any social security number appearing in the papers.  Fed. R. Civ. P. 5.2(a)(1).

The Carriers have not provided the court with a 50-state survey of the state laws that restrict or regulate the disclosure of their citizens' social security numbers, but they have referred the court to one significant such law effective in California that provides as follows:

> A subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, shall not be valid or effective unless it includes a consent to release, signed by the consumer whose records are requested, as required by Section 2891 of the Public Utilities Code.

Cal. Civ. Proc. Code § 1985.3(f).  Although the court appreciates that state privacy laws are not controlling of a discovery dispute in federal court, Pearson v. Miller, 211 F.3d 57, 61 (3d Cir. 2000), we agree with the Carriers that consideration of these laws regarding the requested disclosure of sensitive personal information for millions of unwitting individuals is relevant to consideration of Tech's discovery requests in this case.  Id. at 72-73 (observing that whereas state privilege or privacy laws do not control in federal discovery matters, courts remain free to fashion appropriate protective orders where appropriate under Rule 26(c), and that "[l]egitimate interests in privacy are among the proper subjects of this provision's protection").  We find the privacy concerns of vast numbers of individual customers of the Carriers to be considerable and obvious, and we further conclude that state laws intended to guard

against the unauthorized disclosure of their citizens' private identifying information may properly be considered in evaluating whether to permit the requested discovery. We also find relevant the Carriers' concern that being ultimately compelled to produce such information could cause the Carriers to be in violation of state privacy laws.

Federal courts have been reluctant to require production of social security numbers given the sensitive nature of this private identifying information. See, e.g., Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Housing & Urban Dev., 852 F.2d 87, 89 (3d Cir. 1988), holding modified by Sheet Metal Worker's Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891 (3d Cir. 1998) (denying motion to compel, and observing that employees have a "strong privacy interest in their social security numbers"); Oliva v. United States, 756 F. Supp. 105 (E.D.N.Y. 1991) (denying motion to compel and finding that "social security numbers . . . are a private matter . . . . A social security number may be used in a variety of ways and should not be disclosed without the consent of the individual whose number is being released."); Paluch v. Dawson, Civil No. 1:CV-06-1751, 2007 WL 4375937, *4 (M.D. Pa. Dec. 12, 2007) (although plaintiff withdrew request for defendants' social security numbers, district court observed that such identifying information and other sensitive information was confidential and would not be

compelled); <u>Seales v. Macomb County</u>, 226 F.R.D. 572, 578 (3d Cir. 2005) (denying

plaintiff's request to obtain the social security numbers of juvenile witnesses' parents,

noting that the court was "particularly concerned about the request for Social Security

numbers" and concluding that "the need for confidentiality outweighs the Plaintiff's

need for the requested information . . . .").

In consideration of the manifest privacy considerations that are implicated by

the Plaintiff's ultimate discovery plan in this case, and further mindful of the legal

protections that states have erected to shield against the unauthorized disclosure of

their citizens' social security numbers, together with the concern for these

confidentiality interests demonstrated in the foregoing case law, we agree with the

Carriers that Tech's planned discovery of customer social security numbers and other

personal identifying information is inappropriate and should not be permitted.  We

recognize that the Plaintiff would have us ignore these concerns for the present time,

since his pending subpoenas do not on their own seek disclosure of this private

information.  But we decline to restrict our consideration to what is being requested

in the subpoenas served upon the Carriers, because Tech has been forthright about the

fact that he will ultimately have to seek this identifying information in order to fulfill

his discovery objectives.  Considering the very substantial initial burden required

simply to comply with the current subpoenas, together with the privacy concerns that

would immediately follow, we agree with the Carriers that the Plaintiff's motion to compel should be denied.

### E. Tech's Discovery to the Carriers is Ultimately Futile Because He Cannot Force the United States to Issue Administrative Summonses, or Perform a "Cross-Check" that Would, In Any Event, Result in an Over-Inclusive Class

In addition to the excessively burdensome nature of the discovery Tech seeks, and the clear privacy implications of his ultimate discovery objectives, we find that Tech's motion to compel should be denied for the additional reason that it is ultimately futile.  Although Tech takes great issue with the Carriers and the United States regarding this point, we find their position to be clearly compelling, and we agree with the United States that Tech has no legal basis – or ability – to require the United States to issue administrative summonses and perform a cross-check of the Carriers' records against the IRS' tax return information.  Tech offers no persuasive legal arguments or citation to case law in support of his position that the highly unusual discovery process he envisions is permissible, let alone that it will be able to help determine a certifiable class.

In summary, rather than a very narrow and limited discovery process targeted at the Carriers themselves, it is clear that Tech ultimately seeks to compel the United States to issue administrative subpoenas for an improper purpose; to perform a cross-

check on behalf of a private litigant that would disclose taxpayer information in a manner forbidden by federal law, and eventually undertake the burden and expense of identifying a potential class of plaintiffs that is certain to be over-inclusive.  The IRS argues persuasively that it is not permitted to use private taxpayer information for the sole purpose of creating mailing lists in putative class action lawsuits, Tech has provided no persuasive justification for engaging in such a process, and the United States has properly indicated its intention to resist Tech's eventual demands.[5] Because we agree with the United States that there is no basis to require the government to take these unusual, improper, and burdensome steps, we agree that the discovery Tech currently seeks to compel from the Carriers now should be denied on the grounds that it is ultimately futile.[6]

---

[5] Tech suggests that the United States has no business interfering in his efforts to compel the Carriers to respond to discovery issued only to them.  We disagree, particularly since a complete evaluation of whether the burdensome nature of the discovery served upon the Carriers should be enforced where it is dependent on a second phase of discovery involving the United States, and where that second phase is itself improper.

[6] We are mindful that the district court entered an order re-opening discovery and authorized Tech to serve subpoenas *duces tecum* on the Carriers. However, we do not understand the district court's order to have authorized  the discovery process Tech now clearly envisions conducting, and, therefore, cannot conclude that the district court was given an opportunity to assess the extraordinary scope – and ultimate futility – of Tech's intended discovery. Furthermore, the mere fact of the district court's referral to this Court suggests that the district court had concerns about whether the discovery Tech now seeks is

### *i.* *Tech Cannot Force the United States to Issue Administrative Summons For Purposes of Determining Potential Class Members.*

As part of his overall discovery objectives, Tech would have the IRS obtain from the Carriers customer data, including private identifying information.  As a means of doing so, Tech would apparently have the district court require the IRS to issue administrative summonses to the Carriers compelling the disclosure of this information.  This step, however, would only be a precursor to the next step in Tech's discovery initiative, which would force the IRS to perform a cross-check of tax return records against information that the Carriers produced to the IRS pursuant to administrative summonses.  Tech would then, presumably, use the results of this cross-check to determine a class.  But Tech provides no support for the proposition that the district court may properly require the IRS to issue an administrative summons as part of the discovery process in this civil action, either as a means of identifying potential class members, or to help Tech discover facts to support his substantive legal theory underlying this case.

The Internal Revenue Code authorizes the Secretary of the IRS to issue administrative summonses for certain limited purposes specified in the Code:

---

legally feasible, justified, or warranted.  To the extent Tech disagrees with our judgment in this regard, or in the conclusion we reach in this order, he may take an appeal of this decision to the district court.

**(a) Authority to summon, etc.**--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized--

**(1)** To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

**(2)** To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

**(3)** To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**(b) Purpose may include inquiry into offense.**--The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

26 U.S.C. § 7602.   Nothing in this statute *requires* the Secretary to issue

administrative summonses; rather, the statute *authorizes* the Secretary to do so. See

id.; 26 U.S.C. § 7609(j) ("Use of Summons Not Required"); see also United States

v. McLaughlin, 126 F.3d 130, 137 (3d Cir. 1997) (noting the IRS enjoys "broad discretion in how it conducts its investigations").

Plaintiff simply has no answer to the United States' assertion that there is no legal basis to compel the IRS to issue administrative summonses to assist with discovery in this case, either for class-certification purposes or on the merits of his claims.  Instead, the Plaintiff relies on argument and repeated assertions that the Carriers are merely the "collection agents" of the IRS, and, therefore, can be controlled by the IRS, presumably by forcing the Carriers to surrender customer information so that the IRS can then undertake the discovery Tech claims to require to seek class certification.  We find no merit to Tech's suggestion that the IRS and the Carriers enjoy some sort of master-servant relationship that would enable the IRS to compel the Carriers to produce customer data for this purpose.

Moreover, it would be entirely improper for the court to compel the agency to take discretionary action.  It is settled that a court may only compel an agency to take action that is legally required, see 5 U.S.C. § 706(1), and thus a plaintiff may only proceed on a claim seeking to compel agency action "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (original emphasis).

In this case, the IRS is not "required" to issue administrative summonses, or to take any action to require the Carriers to produce customer information, and it would be improper for the court to require that the IRS do so as part of the discovery process in this action.[7]   In addition, since Tech's purpose in having an administrative summons issued is nowhere provided for in the statute authorizing the IRS to issue such summonses, it would be inappropriate to compel discretionary action by the agency that would itself be an abuse of that agency's discretion.[8]

> ## ii. Disclosure of the Results of the "Cross-Check" Would Violate 26 U.S.C. § 6103.

The United States also contends that Tech's discovery and "cross-check" process would ultimately require the IRS to disclose taxpayer returns and return

---

[7] Tech seems to recognize this fatal flaw in his proposed discovery plan. For this reason, Tech suggests that the IRS is actually required by due process to compel the Carriers to identify the name and addresses of taxpayers who "paid the illegal FET." (Doc. 188, at 7 n.7) Tech provides no support for this contention, and we disagree that the IRS is required to compel the Carriers to produce such information pursuant to general principles of due process.

[8] As for Tech's unsupported contention that the Carriers are merely the "collection agents" of the IRS, and can, therefore, be instructed to produce customer-identifying information to the IRS, we are unpersuaded.  Tech provides no support of any kind for the notion that the IRS can exert control over the Carriers – or any other employers – simply because the Carriers collect taxes and remit them to the IRS.  Indeed, taken to its logical extreme, this assertion is breath-taking in its scope and would convert virtually all of corporate America, which provides some level of cooperation on tax withholding matters, into agents of the IRS.

information, something that is expressly prohibited under federal law.   See 18 U.S.C. § 6103(a) ("except as authorized by this title . . . no officer or employee of the United States . . . shall disclose any return or return information . . . .").   The definition of "return information" is extremely broad, and reaches "virtually any information collected by the Internal Revenue Service Regarding a person's tax liability." Landmark Legal Foundation v. IRS, 267 F.3d 1132, 1135 (D.C. Cir. 2001). Indeed, the statute even prohibits disclosure of whether or not a taxpayer has filed a return for a given year, known as the "fact of filing."   26 U.S.C. § 6103(b)(2)(A); see also Housely v. U.S. Dep't of Treasury & I.R.S., 697 F. Supp. 3, 4 (D.D.C. 1988) (noting that individuals' fact of filing is protected under section 6103 and may not be disclosed).

Although there are statutory exceptions to the nondisclosure rules, none is applicable in this case.[9]  Instead, Tech suggests that the IRS would not be in violation of this statute because the agency would not have to disclose any information, but instead would do the cross-checking work entirely in-house, with IRS employees. We disagree with Tech, and cannot conceive of how the taxpayer information would

---

[9]  In his reply brief, Tech notes that the statute does provide certain exceptions, and he states that "there are several applicable exceptions," (Doc. 188, at 9 n.8), although he does not explain how the exceptions are relevant to this suit or the discovery process he is attempting to establish.   We do not find any of the exceptions have application to this case.   See 26 U.S.C. § 6103(h).

not ultimately be disclosed in some form in order for Tech to be able to utilize the information to compile his potential class. We agree with the IRS that the agency would almost certainly be in violation of section 6103 if it were to undertake the cross-check that Tech suggests be ordered in this case.

### iii.    *The Cross-Check List Would Be Over-Inclusive*.

Finally, we agree with the United States that Tech's "cross-check" method of discovering potential class members would certainly result in an over-inclusive potential class, and would thus ultimately fail to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. We addressed this issue with the parties and the Carriers, and it appears Tech does not really dispute the fact that the cross-check process would ultimately yield individuals who, like Tech, did not have an obligation to file income taxes in 2006, as well as a number of other individuals who were required to file income tax returns, but who failed to do so. The United States has cast these two groups as "true non-filers" and "illegal non-filers." (Doc. 183, at 12) In this case, Tech has alleged that the United States failed to provide him and other "true non-filers" with sufficient notice of the availability of a tax refund for FET that was improperly withheld by the Carriers and submitted to the IRS.

However, as the United States points out, if Tech's "cross-check" discovery process is carried out, any resulting list would inevitably also include numerous

"illegal non-filers" – and these individuals would have no right to the constitutional notice that "true non-filers" claim to have been owed. Indeed, Tech has acknowledged that illegal non-filers are not members of the class he is attempting to assemble. (Doc. 85, at 4) ("The United States argues that the proposed class would include 'individuals who disregarded their legal obligation to file a 2006 income tax return.' The class, however, is limited to those taxpayers who 'are entitled to (but have not yet received) a FET refund . . .'".)

Thus, the information ultimately revealed through the discovery process Tech proposes to implement – a discovery process, it should be remembered, that was initially described as narrowly tailored, limited and targeted– would eventually result in a potential class that is over-inclusive and likely not certifiable under Rule 23. See Bachrach v. Chase Inv. Services Corp., Civ. No. 06-2785, 2007 WL 3244186, *2 (D.N.J. Nov. 1, 2007) ("Plaintiff's cannot maintain this suit as a class action because the proposed class is over-inclusive. Courts may deny certification where the proposed class includes many members without claims, as this one does.") (citation omitted); cf. Von Colin v. County of Ventura, 189 F.R.D. 583, 590 (C.D. Cal. 1999) ("Ensuring that a class is not over-inclusive, Rule 23(a)(2) requires that 'there are questions of law or fact common to the class.'") The over-inclusive aspect of

resulting potential class would appear substantially problematic for Tech's efforts to obtain class certification in a case where certification has already been twice denied.

Finally, we note that the over-inclusiveness of this plan involves a separate, and substantial, conundrum for the United States, the Carriers and countless cell phone customers. As all parties concede, one by-product of providing Tech with his class action mailing list would be the creation of a separate, and potentially enormous, list of "illegal non-filers." Each of these people would be potentially subject to civil action or criminal prosecution by the United States as a result of the cross-match study commissioned by Tech. Entirely aside from the other concerns voiced by the Carriers, it is entirely understandable that these carriers would not want to gratuitously indulge in a costly, cumbersome enterprise which might lead to civil or criminal tax enforcement activity against their own customers simply to facilitate Tech's class action discovery. Yet, Tech's proposed resolution of this concern, which would apparently be that the IRS should not be permitted to use this information for tax enforcement purposes, simply creates a new dilemma, by both effectively enjoining tax law enforcement and immunizing a large class of non-compliant taxpayers. Tech provides no solution for this conundrum, and we cannot perceive of a solution which could permit this plan to move forward.

In reaching this conclusion, we appreciate the challenges Tech faces in this field when trying to identify a class of non-filing excise tax payers who may have been entitled to refunds.  However, while we recognize these challenges, we cannot endorse an approach to resolving these issues which entails substantial burdens on non–parties in pursuit of information which is meaningless unless some form of data mining that is currently not permitted by law is undertaken using corporate records and IRS tax rolls.

### E.   Conclusion

Taken as a whole, therefore, even if the Carriers were required to furnish Tech with information about the customer information that they have in their possession or control, the information that would be produced after considerable effort and expense would have no independent value, and would not, on its own, be relevant for purposes of defining or populating the class in this case.  Instead, Tech would require a separate second phase of discovery, which is not contemplated in the district court's order re-opening discovery.

In that second phase, Tech would have the district court force the IRS to compel the Carriers, through administrative summonses or otherwise, to provide the customer information, including private, identifying information, to the IRS so that the IRS could then perform a "cross check" of customer information against IRS tax

information.  This process in itself would violate federal law by requiring the IRS to disclose information about tax filers that must be kept confidential.  Furthermore, the list of potential class members that would then be generated through work performed by the IRS would almost certainly be over-inclusive by including "true non-filers" and "illegal non-filers".

Thus, even after the burdensome, invasive, and impermissible discovery that Tech argues is warranted in this putative class action, the ultimate result would likely be an over-inclusive class that could not properly be certified in accordance with Rule 23.  We do not believe that such a process is what the district court envisioned when it authorized "the *limited* discovery" that Tech requested, (Doc. 156) (original emphasis), and the motion to compel will be denied.

## IV.   <u>ORDER</u>

**AND NOW**, this 18th day of June 2012, for the reasons set forth above, IT IS HEREBY ORDERED THAT the Plaintiff's motion to compel compliance with the district court's February 7, 2012 order (Doc. 172) is DENIED.


*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


38