IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN TECH, on behalf of himself and all others similarly situated, | : : | |
| Plaintiff, | : : | 1:09-cv-47 |
| v. | : : | Hon. John E. Jones III |
| THE UNITED STATES OF AMERICA, Defendant. | : : | |

## **MEMORANDUM**

## **March 26, 2013**

Before the Court are the cross-Motions for Summary Judgment (Docs. 145 and 210) of the parties to this matter, Plaintiff Brian Tech ("Plaintiff" or "Tech") and the United States of America. The cross-Motions have been fully briefed by the parties and are therefore ripe for our review. For the reasons that follow, we shall grant summary judgment in favor of the United States of America on Tech's procedural due process claim and close this case.

## I.     FACTS

For many years, the Internal Revenue Service ("IRS") imposed a 3% Federal Excise Tax ("FET") on long distance telephone service pursuant to 26 U.S.C. § 4252. Section 4252 had authorized a tax upon long-distance telephone service that is billed according to distance and elapsed time of the call. Over time,

1

telephone companies changed their billing methods; by 2003, they no longer billed their long-distance customers' calls according to distance and elapsed time. This led various telephone customers to sue the United States, alleging that the three percent excise tax no longer applied. By early 2006, five Courts of Appeal agreed that the excise tax was no longer lawful for long-distance carriers that did not bill their long-distance customers' calls according to distance and elapsed time.

On May 25, 2006, the IRS conceded that the tax was no longer lawful for long-distance carriers that did not bill their long-distance customers' calls according to distance and elapsed time, and issued Notice 2006-50. Notice 2006-50 instructed those long-distance carriers to stop collecting the tax on August 1, 2006.

Notice 2006-50 also offered a procedure by which taxpayers could recover telephone excise taxes they had previously paid ("Notice Procedure"). The Notice Procedure provided that requests could be filed for refund of excise taxes wrongfully collected from March 1, 2003 through July 31, 2006. The Notice Procedure further stated that the requests should be made on taxpayers' 2006 federal income tax returns. For individuals filing a 2006 federal income tax return, the IRS included a line on the return to request a refund of the excise tax paid. For those individuals who were not otherwise required to file a 2006 income tax return,

2

the Notice Procedure created Form 1040EZ-T, on which taxpayers could request a refund. Also, the Notice Procedure provided that if a taxpayer did not want to substantiate his or her claim to the excise tax refund, he or she could file for a safe harbor amount without providing documentation.[1]

The IRS did not engage in any direct mailing to advertise the FET refund, but it did initiate a media outreach effort to highlight the availability of the FET refund. This outreach included both formal press releases and informal "Tax Tips." Various national and local media outlets reported on the Notice Procedure. The IRS also urged telephone carriers to publicize the availability of the FET refund, and several carriers displayed refund message on its customer bills or placed a notice "stuffer" inside of billing envelopes.

Plaintiff paid for long-distance telephone service from Verizon from March 1, 2003 to July 31, 2006. He therefore paid to Verizon the 3% FET that was included as a charge on his monthly Verizon bills. Plaintiff paid FET to Verizon totaling $26.03 during this time frame. Plaintiff is disabled and has little earned income. He contends that he was not required to, nor did he, file a federal income

---

[1] In January 2007, the IRS issued Notice 2007-11, which amplified and clarified the prior Notice. Notice 2007-11 set forth safe harbor amounts that ranged from $30 to $60 based on the number of dependents/exemptions in the taxpayer's household. Under this revised Notice Procedure, taxpayers who wished to request more than the applicable safe harbor amount could file Form 8913 with their 2006 federal income tax returns.

tax return for 2006 and was therefore, a "non-filer" for that tax year.

Thus, Plaintiff's claim is that the IRS failed to provide constitutionally adequate notice to him regarding his entitlement to the FET refund pursuant to Notice 2006-50. As the parties and the Court are well aware, this action was initially commenced as a putative class action. However, two attempts by Tech to certify a class in this matter were previously denied, based largely on Tech's inability to identify potential class members. Thus, the due process claim that remains for our consideration on the instant cross-Motions is discrete and limited to Tech himself. We shall now turn to a merits analysis of Tech's due process claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. DISCUSSION

The parties essentially agree that there are no disputed issues of material fact at play in this case. Therefore, what is ripe for our consideration on the cross-Motions is whether, as a matter of law, the United States of America violated Tech's procedural due process rights to the FET refund by providing him with notice of the same pursuant to Notice 2006-05. For the reasons that follow, we find that it did not.

We would be remiss in our analysis if we did not recognize that the matter *sub judice* is not the first time Notice 2006-50 has been challenged in the federal courts. In the matter of *In re Long Distance Telephone Service Federal Excise Tax Refund Litigation*, which was litigated in the United States District Court for the District of Columbia and the D.C. Circuit, the plaintiffs challenged whether the promulgation of Notice 2006-50 violated the Administrative Procedures Act ("APA") because it was issued without adhering to notice and comment

rulemaking procedures. The district court concluded that Notice 2006-50 did in fact violate the APA because the IRS failed to adhere to notice and comment procedures in its promulgation and that the IRS's failure "cannot be considered harmless error since there is 'uncertainty . . .as to the effect of that failure.'" *In re Long Distance Telephone,* 853 F. Supp. 2d 138, 143 (D.D.C. 2012) quoting *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 89 (D.D.C. 2007). Based on the finding of a procedural violation of the APA, the district court prospectively vacated Notice 2006-50. Although invited to do so by the plaintiffs, the district court refused to undertake a review of their substantive challenge to Notice 2006-50, noting that "[o]nce the court vacates Notice 2006-50, it will no longer have any legal effect." *In re Long Distance Telephone*, 853 F. Supp. 2d at 145 n. 2. Therefore, while Notice 2006-50 has been deemed procedurally flawed relative to the APA and prospectively vacated by a federal district court, no determination has been made as to whether Notice 2006-50 violates due process in any regard.

The principles guiding a due process analysis are well-established in the jurisprudence of the federal courts. "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover*

7

*Bank & Trust Co.*, 339 U.S. 314 (1950) citing *Milliken v. Meyer*, 311 U.S. 457 (1940). "The level of process due to a party prior to the deprivation of a property interest . . . is highly dependent on the context. As the Supreme Court has repeatedly emphasized, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F. 3d 230, 239 (3d Cir. 2008) quoting *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001).

When analyzing whether a particular notice comports with due process, claimants are divided into those "known and unknown." A "known" claimant "is one whose identity is either known 'or reasonably ascertainable by the [notifying party].'" *Chemetron Corp. v. Jones*, 72 F. 3d 341, 346 (3d Cir. 1995) quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988); *Wright v. Owens Corning*, 679 F. 3d 101, 103 n. 3 (3d Cir. 2012). "Actual notice must be given to those whose identity could be ascertained with reasonable effort." *Greenfield v. Villager Industries, Inc*. 483 F. 2d 824, 832 (3d Cir. 1973)(citation omitted). In contrast, it has been recognized that, in the cases of persons missing or unknown, employment of an indirect and even probably futile means of notification, such as notice by publication, is all that the situation permits. *Mullane*, 339 U.S. at 317, citing *Cunnius v. Reading Sch. Dist.*, 198 U.S. 458 (1905).

To begin our due process analysis of Notice 2006-50 we must first consider whether Tech was "known" or "unknown" to the IRS. Albeit in a slightly different context, we have already considered this issue in the class certification stage of this litigation:

> The United States argues that neither it, nor any other entity, has records capable of determining membership in the proposed class. While it appears facially possible for the class to be identified through the telephone carriers' records, inasmuch as the carriers remitted the tax to the I.R.S., this method, when examined carefully, is a practical impossibility. As the United States points out, there are several thousand long-distance telephone carriers operating nationwide, and during the time period at issue, there were countless mergers, acquisitions and dissolutions of carriers. If not entirely impossible, retrieving all of the necessary records from this vast amount of entities, many of which are now obsolete or have been absorbed into different umbrella companies, is an incredibly herculean task. In our view, this type of inquiry is of such a "daunting" nature that it makes the class definition insufficient. *See Sadler*, 2008 U.S. Dist. LEXIS 51198 at *10.
>
> Tech heavily relies on the ESA list and other, unidentified "government records" as a means to determine the proposed class. Tech argues that because the IRS identified non-filers that received benefits from the Social Security Administration, Veterans Affairs and the Railroad Retirement Board in order to determine who was eligible for an ESA payment, it should be able to identify non-filers for the purpose of receiving the telephone tax refund. However, this route also presents difficulties. It is important to remember that the ESA list does *not* identify who had a telephone and who paid the tax subject to refund, but rather is a list of those who qualified to receive an economic stimulus check. While there is concededly some overlap between those on the ESA list and those who did not file a 2006 tax return, the ESA list is plainly not an all-encompassing list that indicates whether an individual was not a 2006 non-filer eligible to

9

receive the telephone tax refund.

(Doc. 103, pp. 12-13). As the parties are aware, both of Plaintiff's class certification attempts were denied on the basis that Plaintiff had not proffered an identifiable class. Thus, it is evident that Tech, a 2006 non-filer, was "unknown" to the IRS, and accordingly, actual notice to Tech of Notice 2006-50 was unnecessary and impossible.

Accordingly, we must determine whether the constructive notice provided to Tech, a 2006 non-filer, by Notice 2006-50 was sufficient to comport with due process. To review, Notice 2006-50 provided two methods by which individuals could receive a FET refund. The first way was to claim the refund on the individual's Form 1040 tax return. For those individuals who were not otherwise required to file a 2006 income tax return, the Notice 2006-50 created Form 1040EZ-T, on which taxpayers could request a refund. Because Tech was a non-filer, he did not obtain notice of the FET refund by the IRS's inclusion of a line on the Form 1040. Thus, the only way Tech could obtain his FET refund was to file a 1040EZ-T.

While it is true that Notice 2006-50 was promulgated absent appropriate notice and comment procedures, we do not find that procedural failing to necessarily causes Notice 2006-50 to be violative of Tech's due process rights. As

we have previously discussed in our rulings denying Tech's class certification efforts, the IRS did not know who paid the FET to the telephone carriers, nor was it aware of which households in the United States even had telephone service. Thus, it is our view that the IRS created a layered notice approach through Notice 2006-50 that encompassed its best effort to reach those eligible for an FET refund. First, the IRS provided a line for the return on Form 1040, which millions of Americans use each year to file their taxes. Next, the IRS created a separate form, Form 1040EZ-T, specifically for non-filers to use to obtain the FET refund. Further, the IRS engaged in a media outreach to advertise the availability of the FET refund, resulting in national and local media outlets reporting about Notice 2006-50. Furthermore, the IRS's outreach efforts resulted in the telephone carriers providing FET refund messages to consumers in their monthly billing statements. In fact, Tech's own local paper, the Scranton Times Tribune, twice reported on the FET refund and a FET refund message appeared on Tech's Verizon billing statement.[2]

Based on the foregoing, we find that Notice 2006-50 did not violate Tech's due process rights. As aforestated, it was clearly impossible for the IRS to identify those individuals, including Tech, that were eligible for a FET refund. While

---

[2] Tech admits that, had he read the articles about the FET refund in the Scranton Times Tribune, he would have been prompted to research on how to obtain the refund. (Doc. 209, No. 34).

arguably imperfect, Notice 2006-50 and the attendant media outreach efforts to advertise the refund program were effective enough that over 100 million individuals requested an FET refund thereunder. While it is unfortunate that Tech did not obtain notice of the FET refund program and obtain his $26.03 refund, it is clear that the IRS did not violate Tech's due process rights by virtue of implementing Notice 2006-50 and the procedures we have described above. That a particular notice procedure is imperfect does not *ipso facto* equal a due process violation. Such is the case with the FET refund program in question. Accordingly, an appropriate Order shall issue denying the Plaintiff's cross-Motion for Summary Judgment, granting judgment in favor of the Defendant on Plaintiff's claim, and closing this case.